**Harold E. REW**

v.

**INTERNATIONAL ORGANIZATION, MASTERS, MATES AND PILOTS OF AMERICA, INC., a corporation, et al.**

Civ. A. No. 71–2882.

United States District Court,
E. D. Pennsylvania.

Sept. 29, 1972.

Kip D. Denega, Jr., Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

The complaint filed November 29, 1971, alleges that plaintiff "has been unable to secure employment in his former occupation, solely by reason of the illegal, wrongful and improper expulsion" from membership in defendant unions.[1] Plaintiff's inability to secure employment in his former occupation has existed since his expulsion from defendant unions on January 10, 1956. The nature of the illegality charged to the defendants consists of expelling plaintiff from the unions without affording him an opportunity for notice and hearing on the grounds for expulsion. This action by the defendants, plaintiff contends, violated the Constitution and By Laws of the defendant unions, the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

Three of the defendants,[2] the International Organization Masters, Mates and Pilots of America, Inc. (International), Morris Weinstein, Trustee, International Organization Masters, Mates and Pilots Local No. 2 (Trustee), and International Organization Masters, Mates, and Pilots, Philadelphia Branch Local No. 14p (Philadelphia Branch), have moved to dismiss on the grounds that (1) the court lacks jurisdiction because the necessary diverse citizenship of the parties does not exist and because the subject matter of the action is within the exclu-

---

1. Other benefits attendant upon union membership which plaintiff claims he has lost since his expulsion are death benefits, sick benefits, and the aid and assistance of the unions in all disputes with plaintiff's employers.

2. No appearance has been filed by the defendant Trustees of Masters, Mates and Pilots Pension and Welfare Fund.

sive jurisdiction of the National Labor Relations Board and (2) the complaint is barred by the applicable statute of limitations and by plaintiff's laches.

## I. THE COMPLAINT

Plaintiff's complaint, in which the allegations made are accepted as being true for purposes of deciding defendants' motion to dismiss, 2A Moore's Federal Practice ¶ 12.08 p. 2267 and ¶ 12.10 p. 2314, establishes that prior to January 10, 1956, plaintiff was a member in good standing of the International, Local No. 2 and Philadelphia Branch Unions.[3] C. T. Atkins was the President of the International; Morris Weinstein was Vice President and Trustee of Local No. 2; John J. Handley was Secretary-Treasurer of Local No. 2 and the Philadelphia Branch.[4] Following an investigation by the International of Local No. 2, Atkins appointed Weinstein trustee for the Local on or about June 28, 1955. A suit brought by Local No. 2 in the Court of Common Pleas to enjoin the trusteeship was apparently unsuccessful. Plaintiff was then expelled from membership in the defendant Unions on or about January 10, 1956. This action, plaintiff contends, was taken without notice or hearing on the grounds for expulsion. Further, plaintiff contends that he was not guilty of "any infractions, violations or wrongs sufficient in law to justify his expulsion." The action by the defendants is claimed to be violative of the Constitution and By Laws of Local No. 2, the Constitution of the International,[5] the Constitutions of the United States and of the Commonwealth of Pennsylvania.[6] Plaintiff recites the efforts he made through intra-union appeals to secure his reinstatement in the unions.

Finally, plaintiff alleges his inability to obtain employment in his former occupation because of defendants' actions, and that "he will in all probability be unable to secure regular employment in his trade or occupation in the maritime field since the control of said union exceeds 90% of all licensed maritime jobs and employment in the United States of America." The complaint prays that this court (1) order defendants to restore plaintiff to his former status in the unions, (2) order defendants to pay amounts to the Pension and Welfare Fund for plaintiff's benefit, (3) order defendants to restore plaintiff's benefits and rights in the Pension and Welfare Fund, (4) award damages for loss of earnings, for mental pain and suffering, and (5) award punitive damages.

In construing the complaint in this labor relations case most liberally in favor of plaintiff Abrams v. Carrier Corporation, 434 F.2d 1234 (2d Cir. 1970), cert. denied, United Steelworkers of America v. Abrams, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), two distinct actions by the defendants have allegedly wronged the plaintiff. First, defendants have deprived plaintiff of employment. This result could only occur if defendants have in some manner coerced plaintiff's prospective employers not to hire plaintiff. No specific action to this effect, however, has been pleaded by the

3. International Organization, Masters, Mates and Pilots Local No. 2 has not been made a party to this suit.

4. C. T. Atkins and John J. Handley, while described as defendants in various paragraphs of plaintiff's complaint, have not been made parties to this suit except to the extent that they may be trustees of Masters, Mates and Pilots Pension and Welfare Fund. The complaint, however, does not establish who the trustees for the Welfare Fund are.

5. Plaintiff has not filed nor made part of his complaint the relevant portions of the Local No. 2 or International's constitution and by laws which defendants have allegedly violated. In view of the disposition the court takes of defendants' motion, however, plaintiff's failure to plead specific violations of the unions' constitutions and by laws has not proven fatal.

6. Neither the complaint nor plaintiff's memoranda of law develops the specifics concerning violations of the United States or of the Commonwealth's Constitutions.

plaintiff. Secondly, defendants had in 1956 unlawfully deprived plaintiff membership in defendant unions. Defendants have challenged this court's jurisdiction to provide relief for either of the alleged wrongs committed.

## II.  JURISDICTION

### PRE–EMPTION

Insofar as plaintiff's complaint alleges that defendant unions have deprived plaintiff of employment in his former occupation by coercing prospective employers not to hire plaintiff, this court's jurisdiction to grant relief is pre-empted by the National Labor Relations Board. San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). As stated recently by the Supreme Court, *Garmon* "established the general principle that the National Labor Relations Act pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971). Section 8(b)(2) of the National Labor Relations Act, as amended 61 Stat. 141, 29 U.S.C. § 158(b)(2), makes it an unfair labor practice for a union

> "to cause or attempt to cause an employer . . . to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

It is clear that any conduct allegedly taken by the defendants in an effort to prevent an employer to hire plaintiff in his former occupation is "arguably subject to § 7 or § 8 of the Act." Furthermore, action by a union to coerce an employer not to hire a person because his prior expulsion from the union was for reasons other than a failure to tender dues is certainly not a purely internal union matter. Thus, this aspect of plaintiff's claim for relief is not governed by the International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958) precedents that support state and federal diversity court jurisdiction over purely internal union matters.[7] *See* Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge, *supra*, 403 U.S. at 293–297, 91 S.Ct. 1909.

### DIVERSITY

Plaintiff claims diversity of citizenship as the basis for jurisdiction. Defendant, however, contends that no diversity exists between plaintiff, a citizen of Maryland, and defendant International, which is claimed to have members who are citizens of Maryland. Defendant's citation to United Steelworkers of America, etc. v. R. H. Bouligny, Inc., 382 U. S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) is, however, inapposite. Unlike the defendant union in United States Steel Workers, which was an unincorporated association, International is incorporated. International's citizenship for diversity purposes is, therefore, the place of incorporation and the principal place of business. 28 U.S.C. 1332(c) (1970). Defendant does not deny that it is a New York corporation having its principal place of business in New York. Since, in addition, plaintiff's complaint

---

7. Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss puts forward the proposition that plaintiff's claim involves a violation of the union's duty of fair representation. *See* Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964);

Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). We find it difficult to accept plaintiff's contention that the non-existence of a duty to represent while plaintiff is no longer a union member can be unfair representation.

alleges the requisite jurisdictional amount, it is clear that jurisdiction based on diversity of citizenship exists.

### III. STATUTE OF LIMITATIONS

Plaintiff's claim for recovery, in which jurisdiction is based on diversity, rests on the proposition that Pennsylvania law recognizes that there exists a contract consisting of the constitution and by laws between a union and its members, breach of which will entitle a union member to recover for damages.[8] *See* Williams v. Masters, Mates and Pilots of America, 384 Pa. 413, 120 A.2d 896 (1956). It is not necessary to deal with the merits of this issue since we find that a claim for recovery for breach of contract, even if recognized by Pennsylvania courts, is barred by the applicable statute of limitations.

The Act of March 27, 1713, 1 Sm.L. § 1, 12 P.S. § 31 prescribes a six year statute of limitations for actions alleging breach of contract. The complaint, challenging expulsion from the union in 1956, was filed more than fifteen years after the expulsion. Plaintiff resists dismissal on the basis of the statute of limitations by contending that defendants' wrong-doing has been continuous, and thus the breach of contract continues so long as plaintiff is denied membership in defendant unions.

■■■ Plaintiff's citation to cases that tend to support a theory of continuous breach are inapposite. Both cases cited deal with the breach by a union of its duty of fair representation. Brotherhood of Locomotive Firemen and Enginemen v. Mitchell, 190 F.2d 308 (5th Cir. 1951); Jamison v. Olga Coal Co., 335 F.Supp. 454 (S.D.W.Va.1971). "The duty of fair representation was judicially evolved . . . to enforce fully the important principle that no in-

dividual union *member* may suffer invidious, hostile treatment at the hands of the majority of his coworkers." Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge, *supra*, 403 U.S. at 301, 91 S.Ct. 1909 at 1925. (emphasis added) *See also* Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967). Membership in a union is a requisite to the establishment of a duty of fair representation; the duty continues so long as a person is a member. Thus, expulsion from membership in the union gives rise to a cause of action for breach of contract and not for breach of the duty of fair representation. Since the statute for breach of contract has run, the complaint must be dismissed.

---

8. No recovery is available to plaintiff under the Labor Management Reporting and Disclosure Act of 1959, Public Law 86–257, 29 U.S.C. § 401 et seq. because the actions complained of pre-date the enactment of the Act. Highway Truck

Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608, 611–612 (E.D.Pa.1960), aff'd, 284 F.2d 162 (3 Cir.), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961).