Ganey, Circuit Judge, participated in argument and disposition of case but died before opinion was filed.

**Myron LESKIW et al., Appellants,**

v.

**LOCAL 1470, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO–CLC, et al.**

**No. 71–1077.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 5, 1972.

Decided July 7, 1972.

Godfrey P. Schmidt, Grosman & Grosman, Newark, N. J., for appellants.

Jerome J. LaPenna, Cerreto & LaPenna, Newark, N. J., for Local 1470.

S. Joseph Fortunato, Pitney, Hardin & Kipp, Newark, N. J., for Western Electric.

Before KALODNER, GANEY * and MAX ROSENN, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The six plaintiffs, members of the defendant Local 1470, International Brotherhood of Electrical Workers, AFL–CIO–CLC, are employed as Testers-Inspectors [1] by the defendant Western Electric Company, Incorporated (Kearny Works).

Asserting existence of federal jurisdiction under Section 301(a) of the Labor-Management Relations Act of 1947,

---

* Judge Ganey participated in the argument and disposition of this case but died before this opinion was filed.

1. Testers-Inspectors inspect and test products manufactured and assembled by Western Electric Company.

as amended,[2] they brought this action in the court below in May 1970. In their Complaint they allege, in sum, that (1) they represent a class of Western Electric employees called Testers-Inspectors; (2) the current 1969 Local 1470—Western Electric collective bargaining agreement, as well as its three predecessors since 1964, arbitrarily and unjustifiably divides Testers-Inspectors into two classifications with consequent loss of wages to some of them; and (3) Local 1470, and its president, the defendant Anthony Makris, in negotiating the current collective bargaining agreement and its predecessors, "failed to discharge their respective duties as statutory representatives of the involved Testers-Inspectors . . . in that they . . . in cooperating with defendant Employer, neglected and arbitrarily disregarded the fair interests of said Testers-Inspectors."

Plaintiffs, in their Complaint, sought the following specified relief—(1) damages for loss of wages; (2) a judgment "[r]equiring defendants *to negotiate* in good faith for wage increases for plaintiffs and the class they represent in an amount fairly comparable with the wages of other related employees for whom, during the past years, wages were discriminatingly increased"; and (3) an order "[e]*njoining the defendants from further discrimination against plaintiffs in the negotiation and application* of labor contracts." (emphasis supplied).

The defendants moved to dismiss the Complaint on these grounds: (1) lack of jurisdiction under Section 301(a) because the Complaint did not allege violation of the collective bargaining agreement on the part of the defendants; and (2) the plaintiffs had failed to exhaust available union remedies.

The District Court granted the dismissal motions on the first ground. In its Opinion accompanying its "Final Judgment" of dismissal, it held that under Section 301(a) ". . . there must be a violation of the labor contract before this court can acquire jurisdiction," and "[n]one has been alleged in the instant Complaint." The District Court further stated:

> "*Congress . . . in enacting this section expressly required a breach of a labor contract as a prerequisite to jurisdiction by a Federal district court.* Palnau v. Detroit Edison Co., 301 F.2d 702 (6th Cir. 1962). Further, in enacting the Labor Management Relations Acts, Congress knowingly set up a system in which to some extent the interests of particular individuals may be subordinated to the interests of the group both at the contract negotiation stage and thereafter. See Acuff v. United Papermakers and Paperworkers, 404 F.2d 169, 171 (5th Cir. 1968), cert. denied, 394 U.S. 987 [, 89 S.Ct. 1466, 22 L.Ed. 762] (1969)." (emphasis supplied).

The District Court cited in support of its stated holding Adams v. Budd Company, 349 F.2d 368 (3 Cir. 1965), where we ruled to the same effect. It rejected the plaintiff's contention that Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), later decided, had otherwise construed Section 301(a) and enlarged its jurisdiction to encompass an action which did not allege or involve violation of a collective bargaining agreement. The District Court noted that *Vaca did* involve a breach of the collective bargaining agreement.

We agree in every respect with the District Court's disposition, and its holding that "[t]he allegations of the com-

2.  29 U.S.C.A. Section 185(a).
    Section 301(a) provides:
    "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

plaint in the instant case closely parallel those set forth" in *Adams.*

In *Adams,* the plaintiffs, who were employees of the defendant, The Budd Company, and members of the defendant Union, alleged in their complaint that Budd and the Union, "collusively" and "in bad faith," conspired to deprive them of a "super-seniority" status which they had acquired under their "original contract of hire" and earlier labor contracts, in negotiating a new collective bargaining agreement. The complaint did *not* allege a breach of the agreement itself. Noting that diversity jurisdiction did not exist, we found that the critical question presented was whether federal jurisdiction in such an action existed under Section 301(a).

In doing so we said at 349 F.2d 369–370:

> "The plaintiffs seem to be oblivious of the fact that Section 301(a) only creates federal jurisdiction, in the absence of diversity of citizenship, with respect to '[s]*uits for violation of contracts* between an employer and a labor organization . . . or between any such labor organizations.' (emphasis supplied). [footnote omitted].

> "Here the plaintiffs do not seek redress for violation *of* a collective bargaining agreement; what they seek is redress for an alleged violation *by* a labor contract of rights which they assert were independently, and pre-agreement, vested in them by their 'contract of hire.'

> "We are of the opinion that Section 301(a) did not confer jurisdiction upon the District Court to entertain this action and that it should have dismissed it for that reason.

> . . . . . .

> "In the instant case there is no complaint or contention that Budd and Union violated a provision of a collective bargaining agreement."

In the instant case, as in *Adams,* there is no diversity of citizenship since all the parties are citizens of the State of New Jersey. Also, as in *Adams,* there is no allegation or contention here that the collective bargaining agreement was violated. As the District Court stated "[i]n distilled essence, plaintiffs charge defendant Local 1470 and its president with unfair representation of the involved Testers-Inspectors," and that they "in cooperating with defendant Western Electric, neglected and arbitrarily disregarded the fair interests of plaintiffs and their class when negotiating said labor contracts."

What has been said is dispositive of the critical issue presented by this appeal.

The Final Judgment of the District Court will be affirmed.